JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant April Slater ("appellant") appeals from the judgment of the trial court which affirmed her appeal from the Board of Education of the Cleveland Heights-University Heights City School District. For the reasons set forth below, we affirm.
 {¶ 2} The Board of Education of the Cleveland Heights-University Heights City School District ("board") hired the appellant under a one-year limited teaching contract for the 2000-2001 school year. Appellant was assigned to teach seriously emotionally disturbed ("SED") students at the Monticello Middle School. In April of 2001, the appellant was notified in writing by the board, pursuant to R.C. 3319.11, that her limited teaching contract would not be renewed. The appellant exercised her rights under R.C. 3319.11(G)(1) and requested a written statement describing the circumstances that led to the school board's decision not to reemploy her. The school board complied and provided written reasons to the appellant through its treasurer. The board indicated that it accepted the superintendent's recommendation for non-renewal based on observations and evaluations throughout the year, which demonstrated that the appellant's performance was substandard with regard to lesson plans, the quality of classroom activity, use of classroom time and maintenance of appropriate discipline for students. Each observation and evaluation was completed by Dr. Judy Dell'Aquila, the Coordinator of Special Education.
 {¶ 3} After reviewing the board's reasons for non-renewal, the appellant asserted her right to a hearing before the school board pursuant to R.C. 3319.11(G)(3). The school board scheduled the hearing for June 4, 2001.
 {¶ 4} Prior to the hearing, the appellant requested that three witnesses be subpoenaed or otherwise compelled to attend the hearing before the school board. Those witnesses included: the principal at the school, Renee Cavor; the assistant principal, Michael Clock; and the Positive Education Program ("PEP") Consultant, Mary Ellen Fesser. The appellant alleged that because these witnesses were unwilling to attend the hearing and thus unavailable to her, the board would be lacking crucial information regarding her daily performance. Specifically, she alleged that several categories on the performance evaluation addressed subjects about which an administrator or consultant, who had daily or frequent contact with the appellant, would have information, including: punctuality/contractual hours, record keeping and reporting, cooperation with staff, cooperation with the administration, cooperation with parents, compliance with policies and directives, and workday responsibilities outside of the classroom. The board responded by informing the appellant that they were not statutorily authorized to subpoena or otherwise compel witnesses to attend on her behalf.
 {¶ 5} On June 4, 2001, the non-renewal hearing was conducted. At the hearing, Tom Schmida and Daniel McDonald of the Cleveland Heights Teachers' Union represented the appellant. The issue regarding whether the board was authorized to subpoena witnesses on behalf of the appellant was raised. Schmida noted the appellant's continuing objection to the board's refusal to subpoena the requested witnesses. Ms. Linda Koenig, a designee of the superintendent testified that Dr. Dell'Aquila was the sole evaluator of the appellant in her tenure at Monticello school and further, that Ms. Cavor, Mr. Clock and Ms. Fesser did not contribute to the evaluations of the appellant. She further testified that the witnesses did not participate in the recommendation concerning the appellant's non-renewal.
 {¶ 6} Dr. Dell'Aquila, who evaluated and directed the work of the appellant, testified at the hearing that she first observed the appellant on October 27, 2000. She stated that at that time, she had many concerns regarding the appellant's ability as a teacher, including: vague and inadequate lesson plans, low quality of classroom discussion and activity, inattentiveness to individual differences of the severely emotionally disturbed students, and a failure to maintain appropriate discipline. Dr. Dell'Aquila thereafter met with the appellant on November 10, 2000 to discuss her observations. At that time, Dr. Dell'Aquila also gave the appellant a copy of the teachers' contract regarding observations and evaluations, and informed the appellant of particular areas of teaching upon which Dr. Dell'Aquila's subsequent observations and evaluations would be based.
 {¶ 7} Dr. Dell'Aquila stated that she again observed the appellant on November 28, 2000 and met with the appellant to discuss those observations on December 5. At that time, she and the appellant discussed the importance of maintaining an effective behavior management system and engaging the students in high interest and low interest activities, rather than just providing the students with worksheet tasks. They discussed the need for the appellant to establish specific routines in her classroom for the SED students, who generally respond well to predictability and consistency in the classroom.
 {¶ 8} Dr. Dell'Aquila conducted another observation of the appellant on December 18, 2000 based on continuing concerns regarding the appellant's classroom performance. On January 4, 2001 when discussing the evaluation with the appellant, Dr. Dell'Aquila informed the appellant that a consultant was available to help her develop her teaching skills. At that time, the appellant admitted to Dell'Aquila that she found it difficult to motivate her students.
 {¶ 9} On February 14, 2001, Dr. Dell'Aquila again observed and evaluated the appellant's conduct during two separate meetings, in which the appellant conducted a behavior manifestation determination[1], and an Individual Education Plan ("IEP") periodic review. Following the meetings, Dell`Aquila concluded that the appellant had not appropriately filled out the attendant paperwork and had not followed instructions regarding the proper procedures for completing the necessary paperwork in order to continue with the behavior manifestation determination. Dell'Aquila testified that she took over and completed the appellant's work for her. Further Dell'Aquila noted that in the IEP periodic review, she stopped the appellant during the meeting because the objectives had no bearing on the goals that had been identified for the students. At that point, the appellant admitted to Dr. Dell'Aquila that she was uncomfortable completing individual education plans ("IEP") and that she required training. Thereafter, the appellant and Dell'Aquila arranged a meeting to review the requirements and she provided the appellant with the federal guidelines on the matters.
 {¶ 10} According to Dr. Dell'Aquila, she observed the appellant in her classroom on March 8, 2001 and the two again discussed her performance. Dell'Aquila noted a continuing concern regarding the appellant's ability to complete meaningful lesson plans, the quality of her classroom instruction, time on task, use of class time and the maintenance of appropriate discipline. The appellant disagreed with Dell'Aquila. On March 25, 2001, Dell'Aquila conducted a final observation of the appellant, after which the appellant disagreed with her again. Dell'Aquila finally testified that she spent significantly more time with the appellant than any of the other first year teachers. Despite these efforts, she did not believe that the appellant's level of improvement justified renewal of her contract. Dell'Aquila specifically testified that the appellant was unable to establish an effective behavior management plan for her classroom, was unable to follow directions and that she was unable to incorporate suggestions in order to improve her teaching skills enough to benefit the students in the district. Therefore, Dell'Aquila recommended to the superintendent that the appellant's contract not be renewed.
 {¶ 11} The appellant then cross-examined Dell'Aquila, challenging her findings, methods of evaluating teachers, and her experience in evaluating SED teachers. Dell'Aquila admitted that she was unaware that the IEP's had not originally been prepared by the appellant, rather that the appellant had inherited them from a former teacher. Dell'Aquila also admitted that she was unaware a folder containing directions for a substitute in the absence of the appellant was kept in the front office. Dell'Aquila testified that the lesson plans she reviewed had not been retrieved from the front office, rather they had been submitted to her by the appellant.
 {¶ 12} The appellant testified that after speaking with Dell'Aquila regarding her lesson plans and learning what was expected of her, she changed the format of her lesson plans. She also stated that she spoke with other teachers regarding lesson plans. The appellant testified that in her previous jobs, she had never had a problem with lesson planning. She stated that she believed her lesson plans were adequate for instructing the students and that the plans accommodated the individual needs of her students.
 {¶ 13} The appellant also testified regarding Dell'Aquila's contention that she was missing goals and objectives to introduce the lesson. She stated that the goals, objectives, and directions were always introduced at the beginning of the lesson. The appellant noted that each time she was observed, Dell'Aquila would arrive in the classroom after the goals, objectives and directions were already given. The appellant thereafter defended some of her teaching techniques and presented evidence regarding some of her successful methods, including the positive reinforcement point program she instituted in her classroom.
 {¶ 14} After the presentation of evidence and testimony, the board voted to approve the decision not to renew the appellant's teaching contract.
 {¶ 15} The appellant filed an appeal with the Cuyahoga County Court of Common Pleas. On appeal the trial court concluded that R.C.3319.11 does not provide a statutory right to compel attendance of witnesses upon teachers facing non-renewal of a limited teaching contract. It is from this ruling that the appellant now appeals, asserting a sole assignment of error for our review:
 {¶ 16} "I. The Board of Education failed to provide an adequate hearing to appellant April Slater, contrary to the requirements of R.C.3319.11, where the board refused and failed to compel the attendance of two of its administrators and of a consultant hired by the board, where each of those persons had relevant knowledge about Ms. Slater's performance as a teacher at Monticello School, but where the three were unavailable to Ms. Slater because they would not appear voluntarily."
 {¶ 17} In her assignment of error, the appellant essentially contends that the trial court erred in finding that R.C. 3319.11 does not require a school board to compel the attendance of witnesses at a non-renewal hearing on behalf of a teacher with a limited teaching contract. The appellant avers that she was denied due process at her non-renewal hearing as a result of her inability to present evidence on her behalf. Specifically, the appellant sought to introduce the testimony of two administrators, and a consultant with whom she worked to develop her teaching skills. The appellant believed that these three witnesses would provide the board with crucial information which would influence the board's decision whether to accept the superintendent's recommendation for non-renewal. She argues that the board's refusal to subpoena or otherwise compel the attendance of these witnesses deprived her of due process.
 {¶ 18} The scope of review by the court of appeals of a court of common pleas decision for a non-renewal of a teacher's contract is limited. This court can only review the decision not to renew the contract for procedural errors. Farmer v. Kelleys Island Bd. of Ed.
(1994), 69 Ohio St.3d 156, 158. Strict compliance with procedures, not just substantial compliance is required. See Snyder v. Mendon-Union LocalSchool Dist. Bd. of Edn. (1996), 75 Ohio St.3d 69. R.C. 3319.11 and3319.111 are remedial statutes that must be liberally construed in favor of teachers. Naylor v. Cardinal Local School Dist. Bd. of Edn. (1994),69 Ohio St.3d 162.
 {¶ 19} R.C. 3319.11 delineates specific procedures that a school board must follow after deciding not to renew a teacher's limited contract. Initially, a school board must employ the evaluation procedures set forth in R.C. 3319.111 prior to a decision not to renew a teacher's limited contract.[2] In this case, there is no dispute that the board complied with the procedures set forth in R.C. 3319.11 and that the appellant properly asserted her rights under R.C. 3319.11 (G). The material dispute lies in the hearing that was afforded the appellant.
 {¶ 20} R.C. 3319.11(G)(5) provides:
 {¶ 21} "Any hearing conducted pursuant to this division shall be conducted by a majority of the members of the board. The hearing shall be held in executive session of the board unless the board and the teacher agree to hold the hearing in public. The superintendent, assistant superintendent, the teacher, and any person designated by either party to take a record of the hearing may be present at the hearing. The board may be represented by counsel and the teacher may be represented by counsel or a designee. A record of the hearing may be taken by either party at the expense of the party taking the record."
 {¶ 22} The Supreme Court of Ohio addressed the hearing requirement of R.C. 3319.11 in Naylor, supra. The court stated:
 {¶ 23} "While we agree with the board that the type of hearing described in R.C. 3319.11(G)(5) does not necessarily entail the same procedures delineated in R.C. 3319.16 we find that the General Assembly intended a more thorough and formal proceeding than that which was accorded plaintiff. If the General Assembly had intended to restrict a nontenured teacher's right to the simple recitation of a position statement, it could have easily done so by use of another phrase, such as `presentation of argument' or `oral argument.' In our view, the requirements of R.C. 3319.11(G)(5) envision more than an informal session between a school board and the teacher, where the teacher makes a verbal presentation protesting nonrenewal of his or her contract." Id. at 168. The Naylor court found the teacher-appellant's hearing "woefully inadequate" and held that the hearing provided teachers under limited contracts by R.C. 3319.11(G)(3), (4) and (5) necessarily includes the presentation of evidence, confrontation and examination of witnesses and the review of the arguments of the parties. Id. at 169.
 {¶ 24} The hearing that was afforded appellant in this case is notably different from the hearing in Naylor. The hearing in this case was not an informal session between the board and the appellant, where the board recited the reasons for the appellant's non-renewal and the teacher was permitted to do little more than make a verbal presentation protesting nonrenewal. Instead, the appellant was afforded an opportunity to confront and cross-examine a witness who exclusively observed and evaluated her performance in the classroom. Accord Sparer v. EvergreenLocal School (Nov. 4, 1994), Fulton App. No. 94FU000003 (At a nonrenewal hearing where appellant was not permitted to cross-examine a witness regarding the observations and evaluations which led to the recommendation of nonrenewal, the teacher was denied due process.) The appellant successfully questioned Dell'Aquila's methods and experience in evaluating SED teachers. Further, the appellant was afforded an opportunity to present evidence to rebut Dell'Aquila's findings that her teaching was substandard. Both the appellant and her representatives were given an opportunity to speak regarding Dell'Aquila's observations and evaluations and call into question their accuracy. For instance, the appellant offered a reason as to why the goals, objectives and directions appeared to have been omitted from the classroom by stating that Dell'Aquila had actually missed them, as a result of her tardiness to each class. The appellant also presented lesson plans which Dell'Aquila had not reviewed, which the appellant believed to be comprehensive. We find that the appellant was afforded a fair and complete hearing contemplated in Naylor.
 {¶ 25} Regarding the appellant's contention that the board should have subpoenaed or otherwise compelled the attendance of three other witnesses, we note that the basis of the board's review regarding the appellant's non-renewal was her deficient classroom performance and ineffectiveness with her students. The fact that the appellant may have been punctual, cooperated with her colleagues, the administration and parents, or complied with workday responsibilities outside of the classroom was irrelevant to her effectiveness as a teacher. Accord Mannov. Chardon Local School Dist. Bd. of Edcn. (Nov. 29, 1996), Geauga App. No. 96-G-1985. Although the appellant asserts that this information was crucial to the board's decision whether to non-renew, we find they are plainly immaterial to whether the appellant performed satisfactorily in the classroom. Furthermore, the appellant did not attempt to introduce evidence nor any witnesses, other than the three she requested, to testify on her behalf regarding these matters. Had she thought that the information was so crucial, she was entitled to present the testimony or affidavits of other teachers who would have had knowledge of those matters. In addition, any testimony which she contends would have been beneficial to her is merely speculative. Neither the appellant, nor her representatives, spoke to the three witnesses regarding what they might testify to or what their opinion of the appellant's teaching skills were.
 {¶ 26} In a case where the appellant was afforded a hearing which complied with R.C. 3319.11 and the Ohio Supreme Court's decision inNaylor, we decline to find that a failure to subpoena or otherwise compel the attendance of witnesses is a per se denial of due process at a hearing as contemplated by R.C. 3319.11 and under Naylor. However, we think that a school board may, in certain circumstances, be required to compel the attendance of essential witnesses, where a failure to do so would result in depriving a non-tenured teacher a meaningful hearing; for example, in a case in which a non-tenured teacher is denied an opportunity to confront and examine a crucial witness, who observed and evaluated the teacher and thereafter recommended non-renewal of a limited contract.
 {¶ 27} Furthermore, we note that the legislature affirmatively provided for subpoena powers and other privileges at a hearing under R.C.3319.16 which governs the termination of teacher, and omitted such powers in R.C. 3319.11 which governs the non-renewal of a contract. R.C. 3319.16
"Termination of contract by board of education" states, in pertinent part:
 {¶ 28} "* * * Both parties may be present at such a hearing, be represented by counsel, require witnesses to be under oath, cross-examine witnesses, take a record of the proceedings, and require the presence of witnesses in their behalf upon subpoena to be issued by the treasurer of the board. In case of the failure of any person to comply with a subpoena, a judge of the court of common pleas of the county in which the person resides, upon application of any interested party, shall compel attendance of the person by attachment proceedings for contempt."
 {¶ 29} "This court neither has the power to add to a statute nor question the legislature's motive in omitting such a right." Martines v.Bd. of Edn. of the Cleveland City School District (Dec. 16, 1993), Cuyahoga App. No. 64263. (Legislature provided for a right to appeal certain rulings of the board to the court of common pleas in one statute and in another section of the statute, omitted such a right.);Metropolitan Securities Co. v. Warren State Bank (1927), 117 Ohio St. 69.
 {¶ 30} Finding no merit to the appellant's sole assignment of error, we affirm the judgment of the trial court.
KENNETH A. ROCCO, A.J., and FRANK D. CELEBREZZE, JR., J., concur.
[1] A behavior manifestation determination occurs when a student approaches ten days suspension level and a teacher is legally required to determine whether the student's behavior is a manifestation of their disability. In this case, the record demonstrates that the appellant was trained on two different occasions regarding these determinations.
[2] Parties to a collective bargaining agreement may agree to alternate procedures. Naylor, supra.